UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HELEN ADAMS,

        Plaintiff,

                                          CASE NO. 2:11-CV-13398
v.                                      JUDGE NANCY G. EDMUNDS
                                          MAGISTRATE JUDGE PAUL KOMIVES

GENERAL MOTORS COMPANY,

        Defendant.
                                          /

## REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (docket #10) and DEFENDANT'S MOTION FOR JUDGMENT (docket #14)

I.      RECOMMENDATION: The Court should deny plaintiff's motion for judgment on the administrative record (docket #12) and should grant defendant's motion for entry of judgment (docket #15).

II.     REPORT:

A.     *Background*

Plaintiff Helen Adams commenced this action on August 4, 2011. Defendant is General Motors LLC, as Plan Administrator for the General Motors Hourly-Rate Employees Pension Plan ("HRP"). Plaintiff seeks relief pursuant to section 502 of the Employee Retirement Income Security Act, 29 U.S.C. § 1132, and alleges that defendant wrongfully denied her claim for pension benefits. The matter is currently before the Court on the parties' cross-motions for judgment on the administrative record.

Plaintiff was employed as a temporary employee by Motors Liquidation Company ("MLC"), formerly General Motors Corporation, intermittently between May 27, 1973, and March 31, 1976. Administrative Record ("AR"), at 4, 58. Plaintiff was injured at work on March 31, 1976, and did

not return to work. She was discharged on April 6, 1976. Plaintiff obtained workers compensation disability benefits, which she continues to receive. *See* AR, at 20, 56, 58, 73. Plaintiff seeks pension benefits pursuant to the 1976 HRP. *See* AR, at 604-62.[1]

Under Article II of the HRP, eligibility for pension benefits is limited to one who was an "employee." AR, at 620-21, HRP Art. II, §§ 1-4.[2] The HRP defines an "employee" as:

> Any person regularly employed in the United States by the Corporation or by a wholly-owned or substantially wholly-owned domestic subsidiary thereof, on an hourly-rate basis, including:
> (1) hourly-rate persons employed on a full time basis;
> (2) hourly-rate persons on incentive pay plans;
> (3) General Motors Institute students and students from other educational institutions who are enrolled in cooperative training courses on hourly rate;
> (4) part time hourly-rate employees who, on a regular and continuing basis, perform jobs having definitely established working hours, but the complete performance of which requires fewer hours of work than the regular work week, provided the services of such employees are normally available, for at least half of the employing unit's regular work week.

AR, at 645, HRP Art. X, § 1(a). The HRP further provides that "[t]he term 'employee' shall not include . . . temporary employees." AR, at 645, HRP Art. X, § 1(b)(1). The HRP was incorporated into the collective bargaining agreement ("CBA") entered into by MLC and the United Auto Workers ("UAW"). Under the CBA, "[e]mployees shall be regarded as temporary employees until their names have been placed on the seniority list." AR, at 151, CBA § 56. Such lists are to be updated and periodically provided to the UAW. AR, at 152-53, CBA §§ 60-61c. The CBA provides that:

> In compensable injury and legal occupational disease cases, sick leave will be

---

[1]Defendant contends that the 1976 HRP did take into effect until after plaintiff's discharge on April 6, 1976, and her entitlement to benefits is governed by the 1973 HRP. Nevertheless, defendant asserts that "[t]he two agreements are identical insofar as the relevant terms are concerned." Def.'s Br., at 3 n.3.

[2]The HRP uses the spelling "employe" rather than "employee." As do the parties, I use the conventional spelling, even when quoting the plan.

>granted automatically and seniority will accumulate for the full period of legal temporary disability. Temporary employees disabled by compensable injury or legal occupational disease shall be given credit for the period of such disability toward acquiring seniority.

AR, at 188, CBA § 108. It also provides, however, that:

>Temporary employees without seniority shall not receive credit for time off sick toward the ninety (90) days of employment required to acquire seniority, except as provided in Paragraph (108) and Appendix D, and in no case shall a temporary employee's name be placed on the seniority list while away from work on sick leave.

AR, at 188, CBA § 107. Under the HRP, "seniority" is determined in accordance with the CBA. AR, at 646, HRP Art. X, § 4. Seniority is subject to the CBA's grievance procedures. AR, at 146, CBA § 46.

In 2007, MLC, then the Administrator of the Plan, began paying pension benefits to plaintiff. As part of a judicially approved asset purchase agreement in connection with MLC's subsequent bankruptcy, defendant took over sponsorship of the HRP on July 10, 2009. Following an audit, defendant determined that plaintiff was not eligible for pension benefits, and informed her of this fact and requested repayment of benefits paid out in a letter dated August 6, 2009. AR, at 22. Specifically, the letter informed plaintiff that because she was "a temporary employee at the time of the discharge, [she] never acquired seniority and [was] not a regular active employee." *Id.* Plaintiff appealed this decision to the Pension Committee on September 29, 2009. AR, at 58. In her claim, plaintiff admits that she "was discharged as a temporary employee," but claimed that she "was told that as long as [she] received workman compensation, [her] credited service continue [sic]." *Id.* On June 29, 2010, the Committee affirmed the benefit decision. AR, at 76-77.

B.  *Legal Standard*

The normal rules governing summary judgment under FED. R. CIV. P. 56 "are inapposite to ERISA actions and thus should not be utilized in their disposition." *Wilkins v. Baptist Healthcare*

3

*Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998). This is because a district court reviewing an administrator's decision in an ERISA case "may only consider evidence that was first presented to the administrator," *id*. at 618, while "Rule 56 is designed to screen out cases not needing a full factual hearing." *Id*. at 619. For this reason, "[t]o apply Rule 56 *after* a full factual hearing has already occurred before an ERISA administrator is . . . pointless." *Id*. Accordingly, a court should employ two steps in adjudicating a denial of benefits case under ERISA. First, with respect to the merits, a court should conduct a review "based solely upon the administrative record, and render findings of fact and conclusions of law accordingly. The district court may consider the parties' arguments concerning the proper analysis of the evidentiary materials contained in the administrative record, but may not admit or consider any evidence not presented to the administrator." *Id*. Second, the court "may consider evidence outside of the administrative record only if that evidence is offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part." *Id*. The evidence contained in the administrative record which properly may be considered by a court includes any evidence submitted during the administrative appeals process. *See Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991).

Plaintiff seeks to recover benefits under § 502(a)(1) of ERISA, 29 U.S.C. § 1132(a)(1). In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989), the Court held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id*. at 115; *see also*, *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008). Where the plan does give discretionary authority, however, a court "reviews the administrator's decision to deny benefits using 'the highly deferential arbitrary and capricious

4

standard of review.'" *Gismondi v. United Technologies Corp.*, 408 F.3d 295, 298 (6th Cir. 2005) (quoting *Killian v. Healthsource Provident Adm'rs, Inc.*, 152 F.3d 514, 520 (6th Cir. 1998) (citing *Firestone Tire*, 489 U.S. at 115)); *see also*, *Glenn*, 554 U.S. at 111. Here, plaintiff does not dispute that the Plan grants the administrator discretionary authority, and the parties agree that the arbitrary and capricious standard applies. Thus, in this summary judgment context, the court must "determine if there is any genuine issue of material fact whether the company's decision to deny benefits was arbitrary and capricious." *Id*. (internal quotation omitted).

The arbitrary and capricious "standard is extremely deferential and has been described as the least demanding form of judicial review." *McDonald v. Western-Southern Life Ins. Co.*, 367 F.3d 161, 172 (6th Cir. 2003). As the court explained in *Gismondi*:

> Under this deferential standard, we will uphold a benefit determination if it is rational in light of the plan's provisions. When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious. Indeed, we must accept a plan administrator's rational interpretation of a plan even in the face of an equally rational interpretation offered by the participants.

*Gismondi*, 408 F.3d at 298 (citations and internal quotations omitted). In conducting this review, the Court may consider only the evidence in the administrative record. *See Jones v. Metropolitan Life Ins. Co.*, 385 F.3d 654, 660 (6th Cir. 2004). Plaintiff bears the burden of demonstrating that the administrator's decision was arbitrary and capricious. *See Farhner v. United Transp. Union Discipline Income Protection Program*, 645 F.3d 338, 343 (6th Cir. 2011).

C.   *Analysis*

Here, the Court should conclude that the administrator's decision to deny benefits was not arbitrary and capricious. There is no evidence in the record that the plaintiff was ever employed as anything other than a temporary worker, and plaintiff stated as much herself in her appeal to the

Pension Committee. *See* AR, at 58. In this case, the Court's review therefore does not involve a review of the administrator's evidentiary determinations. Rather, "in this matter, as in many such cases, 'the validity of [plaintiff's] claim to benefits . . . turn[s] on the interpretation of terms in the plan at issue.'" Harrell v. Metropolitan Life Ins. Co., 401 F. Supp. 2d 802, 809 (E.D. Mich. 2005) (Lawson, J.) (quoting *Firestone Tire & Rubber*, 489 U.S. at 115). The most important factor in interpreting a plan's provision is the plain meaning of the language used, and the administrator must adhere to any unambiguous language. *See Farhner*, 645 F.3d at 343. Under the arbitrary and capricious standard or review an administrator has "'great leeway in interpreting ambiguous terms,' so long as that interpretation is rational." *Senzarin v. Abbott Severance Pay Plan for Employees of KOS Pharms.*, 361 Fed. Appx. 636, 640 (6th Cir. 2010) (quoting *Moos v. Square D Co.*, 72 F.3d 39, 42 (6th Cir. 1995)). If the administrator's interpretation of the plan is one of two reasonable interpretations, the administrator's interpretation must be upheld, *see Morrison v. Unum Life Ins. Co. of Am.*, 730 F. Supp. 2d 699, 707 (E.D. Mich. 2010) (Edmunds, J., adopting report and recommendation of Scheer, M.J.), even if the Court would come to a different conclusion on *de novo* review, *see Senzarin*, 361 Fed. Appx. at 640 (citing *Moon v. Unum Provident Corp.*, 405 F.3d 373, 379 (6th Cir. 2005)). In short, the question is not "whose interpretation of the plan documents is most persuasive, but whether the [administrator's] interpretation is unreasonable." *Winters v. Costco Wholesale Corp.*, 49 F.3d 550, 553 (9th Cir. 1995) (internal quotation omitted); *see also*, *Johnson v. Eaton Corp.*, 970 F.2d 1569, 1574 (6th Cir. 1992).

Under this deferential standard, defendant's interpretation of the HRP is reasonable, and thus its decision to terminate plaintiff's benefits was not arbitrary and capricious. By its plain terms, the HRP limits pension benefits to "employees." AR, at 620-21, HRP Art. II, §§ 1-4. The HRP contains a thorough definition of "employee," HRP Art. X, § 1, which plaintiff does not contend she satisfies.

6

More importantly, the HRP explicitly provides that "[t]he term 'employee' shall not include . . . temporary employees," AR, at 645, HRP Art. X, § 1(b)(1), and there is no dispute that plaintiff was never anything other than a temporary employee. In support of her claim, plaintiff relies on § 108 of the CBA, which provides that "[i]n compensable injury and legal occupational disease cases" such as plaintiff's case, "sick leave will be granted automatically and seniority will accumulate for the full period of legal temporary disability," and further provides "[t]emporary employees disabled by compensable injury or legal occupational disease shall be given credit for the period of such disability toward acquiring seniority." AR, at 188, CBA § 108. This language, however, provides only that plaintiff was entitled to accumulate seniority during the period of her disability, and to be given credit for this time toward *acquiring* seniority. This section must be read in conjunction with § 107. Section 107 provides the general rule that "[t]emporary employees without seniority shall not receive credit for time off sick toward the ninety (90) days of employment required to acquire seniority, except as provided in Paragraph (108)." AR, at 188, CBA § 107. Read together, § 107 establishes a general rule of no credit towards acquiring seniority for temporary employees while on sick leave, and § 108 establishes an exception to this rule, allowing such credit for temporary employees on sick leave due to a legal disability. If this was all the two provisions stated, plaintiff's argument would have merit. But § 107 also provides that notwithstanding the exception set forth in § 108, "in *no case* shall a temporary employee's name be placed on the seniority list while away from work on sick leave." AR, at 188, CBA § 107 (emphasis added). In other words, while a temporary employee on sick leave due to a legal disability may accumulate time during that leave towards acquiring seniority status, she is not eligible to attain that status until she returns to work and can be placed on the seniority list.

      Plaintiff argues that all of this is of no moment, because "it is not her 'seniority,' it is her 'credited service' which governs eligibility for benefits[.]" Pl.'s Br., at 4. If this argument is correct,

7

however, it is only correct insofar as plaintiff is already an "employee" under the HRP. The CBA expressly provides that "[e]mployees shall be regarded as temporary employees until their names have been placed on the seniority list," AR, at 151, CBA § 56, and the CBA's rules regarding seniority are expressly incorporated into the HRP, *see* AR, at 646, HRP Art. X, § 4. The syllogism followed by the administrator is simple: because plaintiff never returned to work, under § 107 of the CBA she could not be placed on the seniority list; because she was not placed on the seniority list, under § 56 she remained a temporary employee; because she was a temporary employee, she was not an "employee" under the definition of that term in Article X, §1; and because she was not an "employee," she is not eligible to receive benefits under Art. II, §§ 1-4 of the HRP. Based on the plain language of the HRP and CBA discussed above, this is a reasonable interpretation of the plan to which this Court must defer.[3]

This conclusion is not altered by the fact that plaintiff was initially granted pension benefits.

---

[3]Plaintiff's reliance on *Haynor v. General Motors Corp.*, 606 F. Supp. 2d 675 (E.D. Mich. 2009) (Lawson, J.), is misplaced. In that case, the Court found arbitrary and capricious the administrator's denial of benefits under the HRP to an employee based on the administrator's determination that the plaintiff had not accumulated sufficient years of credited service. The administrator had determined that § 108 did not apply because the plaintiff had voluntarily quit, rather than leaving work due to a compensable injury. *See id.* at 687-88. The Court found that this determination was arbitrary because it was based on a computer entry, rather than on the evidence of plaintiff's injury and the administrative and judicial determinations of the State of Michigan, which clearly reflected that the plaintiff had left work due to a compensable injury. *Id.* at 690. The Court did note, in rejecting the defendant's argument concerning the plaintiff's seniority, that "to the extent there is any difference between 'seniority' and 'credited service,' it is the latter that governs eligibility for benefits[.]" *Id.* at 691. This statement, however, was in the context of discussing Article II, § 4(a) of the HRP, which provides that "[a]n *employee* who is totally and permanently disabled prior to attaining age 65, and has at least 10 years of credited service, shall be eligible for a disability pension[.]" AR, at 621, HRP Art. II, § 4(a) (emphasis added). There was no question that the plaintiff in *Haynor* was an "employee" as defined in the HRP and the CBA, and the only question was whether he satisfied the requirements for a disability pension under Article II, § 4 of the HRP. The Court did not consider, and nothing in its analysis bears on, the initial question of whether a temporary employee on disability who never returns to work is an "employee" eligible for benefits under the HRP. In that case, seniority rather than credited service does matter, because an employee remains a temporary one until placed on the seniority list under § 56 of the CBA. Thus, *Haynor* is inapposite.

A plan administrator is not bound forever by its mistakes. ERISA administrators "have a duty to all beneficiaries to preserve limited plan assets," *Conkright v. Frommert*, 130 S. Ct. 1640, 1650 (2010), a duty that allows administrators to cease paying benefits wrongfully granted.[4] As the Third Circuit has observed in a slightly different context:

> Where an ERISA plan mandates a denial of benefits, the mere fact that administrators have in the past granted benefits is no reason to impose a straightjacket requiring them to do so forever. Both the clear requirements of ERISA and obvious reasons of policy suggest that administrators should be allowed to correct their mistakes and deny benefits to those participants who are not eligible for them under the unambiguous terms of their plan.

*Vitale v. Latrobe Area Hosp.*, 420 F.3d 278, 286 (3d Cir. 2005); *cf. Conkright*, 130 S. Ct. at 1646 (2010) (court must defer to administrator's reasonable interpretation of plan, even if court has found that a prior interpretation of the plan was arbitrary and capricious). Because defendant's decision that plaintiff was not an "employee" eligible for benefits under the HRP was a reasonable interpretation of the plan, the Court must defer to that interpretation even though defendant had initially paid benefits to plaintiff.

D.   *Conclusion*

In view of the foregoing, the Court should conclude that defendant's decision that plaintiff is not entitled to pension benefits was not arbitrary and capricious. Accordingly, the Court should deny plaintiff's motion for summary judgment and grant defendant's motion for summary judgment.

III.   NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation,

---

[4]Indeed, where allowed by the plan, an administrator may bring a civil action or a counterclaim under § 503(a)(3)(B), 29 U.S.C. § 1132(a)(3)(B), to recover benefits wrongfully paid. *See Sereboff v. Mid Atlantic Med. Servs., Inc.*, 547 U.S. 356, 361-69 (2006); *Gilchrest v. Unum Life Ins. Co. of Am.*, 255 Fed. Appx. 38, 45-46 (6th Cir. 2007).

but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives<br>PAUL J. KOMIVES<br>UNITED STATES MAGISTRATE JUDGE

Dated: 7/6/12

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and by electronic means or U.S. Mail on July 6, 2012.
>
> s/Eddrey Butts
> Case Manager